Amos C. Dunham *v.* Wm. C. Morton *et al.*

(No. 8001)

Submitted July 24, 1934.    Decided July 27, 1934.

*J. O. Henson* and *L. DeW. Gerhardt,* for relator.
*Harry H. Byrer,* for respondents.

Maxwell, Judge:

The relator, Amos C. Dunham, a resident and voter of the county of Berkeley, being desirous of becoming a candidate for the Republican nomination for the office of commissioner of the county court of said county, presented to the board of ballot commissioners of said county his application to become a candidate for such nomination in the primary election to be held in said county, and throughout the state, August 7, 1934, that being the primary election for the nomination of candidates to be voted upon at the general election to be held in November, 1934.

The ballot commissioners, respondents hereto, having refused to accept his application to become such candidate, the relator seeks by this proceeding in mandamus to require the board to receive his application and to cause his name to be printed as such candidate on the ballots which will be used at the primary election.

The ballot commissioners justify their refusal on the ground that there will be no vacancy on said court to be filled at the general election of 1934.

This is the background. At the general election 1932, William M. Johnson and J. C. McKown, the latter a respondent in this proceeding, were the Republican and Democratic candidates, respectively, for the office of commissioner of said court for the full term of six years. Their post-election contest was determined in this court (*State ex rel. McKown v. Board of Canvassers*, 113 W. Va. 498, 168 S. E. 793) in March, 1933. The result was a tie. By formal order entered November 15, 1933, the two members of the county court then in office declared their inability to agree on a person to fill the vacancy in the office of commissioner caused by the said tie vote.

During the period of the recited events, there was in existence a statute of the state which read as follows:

"Whenever the governor is, or the board of canvassers of a county are, to declare the result of an election, and it appears to him or them that two or more of the persons voted for have received the highest and an equal number of votes for the same office, so that the election to the office is not decided by the returns, he, or they, being required to declare the result, shall decide the tie by the election of one of such persons: Provided, however, That in case of a tie in the vote for school commissioner or president of a district board of education of a county, the county superintendent shall appoint one of the contestants as commissioner or president." Code 1931, 3-5-36.

The county court is *ex officio* the board of canvassers. Code 1931, 3-5-33. It was in that role and in consequence

of its failure to comply with the requirements of the above quoted statute with reference to breaking a tie that the said order of November 15, 1933, was entered.

Soon after the entry of the last mentioned order the Legislature on the 10th of January, 1934, amended the above quoted statute (Code, 3-5-36) by striking out the words "Provided, however", and all subsequent words of the said section, and substituting in lieu thereof the following:

> "* * * but in the event the board of canvassers shall have failed to decide the tie within thirty days after such tie shall have been found by them to exist, upon application to the governor by any one of such persons so voted for, he shall break the tie by the selection of one of such persons and shall certify his choice to such board of canvassers, who shall forthwith reconvene as a board of canvassers and declare such person duly elected for the office for which such person was a candidate." Acts of the Legislature of Second Extraordinary Session 1933, chapter 84. Effective from passage.

Immediately after the passage of the amendatory act, McKown petitioned the Honorable H. G. Kump, Governor of the State of West Virginia, to exercise the authority newly vested in him by said amendment and to break the tie for election of commissioner of the county court of Berkeley County. Thereafter, on the 22nd of January, 1934, the governor issued his proclamation breaking the tie by the selection of McKown to be county commissioner, and certified his finding to the board of canvassers of Berkeley county. In pursuance of the proclamation of the governor, the board of canvassers on the 30th of January, 1934, by formal order declared that J. C. McKown had been duly elected to the office of county commissioner for the term of six years beginning January 1, 1933, and directed the clerk of the county court to issue to McKown a certificate of such election. McKown then executed bond as required by law and took the oath of office.

It is the relator's contention that the effort to install McKown under the governor's proclamation for the remaining portion of the original term of six years was abortive and void because, it is urged, the said amendatory act of January 10, 1934, is unconstitutional. The particular provision of the state Constitution invoked is section 23 of Article VIII. The pertinent portion thereof reads: "The commissioners (commissioners of county courts) shall be elected by the voters of the county, and hold their office for the term of six years * * *."

This provision of our organic law is plain and unequivocal. It means simply this: county commissioners shall be elected by the vote of the people and in no other manner. The constitutional specification of the one method of selection of county commissioners operates to the exclusion of all other methods. This proposition is based on axiomatic law. *Expressio unius est exclusio alterius.*

A tie vote between candidates Johnson and McKown having been ascertained by this court, and the two sitting members of the county court of Berkeley county having failed thereafter to break the tie, there arose a stalemate. The effort to elect a commissioner had proven ineffectual; it had come to naught. The people of the county had failed to elect a commissioner. There was a vacancy. But we are concerned here not with an effort to fill the vacancy by an *ad interim* appointment until the next general election, but with an effort to install for the major part of the full term one of the unsuccessful candidates. The legislature, by the amended act, has sought to repose in the chief executive of the state an authority which the Constitution has expressly reserved to the people of the several counties, respectively. We are therefore of opinion that the said amendment in so far as it purports to clothe the governor with authority to break a tie vote for county commissioner is unconstitutional and void.

It follows that there is no constitutional basis for respondent McKown's claim of tenure of office for the residue of the six-year term beginning January 1, 1933. At most, he is merely a *de facto* official and can have no

314

shadow of right to hold the office on his present basis of tenure after the people of the county shall have elected a commissioner who shall have qualified to enter upon the discharge of the duties of his office.

Therefore the relator was within his right in undertaking to become a candidate for the Republican nomination for the portion of the six-year term of county commissioner beginning January 1, 1933, which will remain after the election of November, 1934. He is entitled to have his name printed on the ballots for the primary election to be held August 7, 1934.

There are ample provisions in the statute for the filling of vacancies until succeeding general elections. Code, chap. 3, art. 10. But such course differs widely from the procedure here involved, namely, the attempt to place in office for about five years of the full six-year term a man who had not been elected by the people.

A writ of mandamus as prayed will be awarded.

*Writ awarded.*